**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DCSTAR INC., | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-07362 |
| THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**COMPLAINT**

Plaintiff DCSTAR Inc. ("DCSTAR" or "Plaintiff"), by and through its undersigned counsel, brings this action against the individuals and entities operating the online storefronts listed in Schedule A, attached hereto as Exhibit 2 (collectively, the "Defendants"). These Defendants, acting through the internet marketplace accounts identified in Schedule A, have engaged in unlawful conduct that infringes Plaintiff's patent rights. In support of this Complaint, Plaintiff alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Plaintiff's claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

2.     This Court has personal jurisdiction over each Defendant because each Defendant transacts business in the State of Illinois and within this Judicial District. The acts and events giving rise to this action, for which each Defendant is responsible, occurred in Illinois and within this Judicial District.

1

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) because each Defendant has purposefully directed commercial activity toward consumers in the United States, including those in Illinois, through fully interactive, transactional online storefronts associated with the Defendant online stores. Each Defendant targets Illinois residents by offering products for sale and shipment into this District, has made and continues to make sales of infringing products into this jurisdiction. Each Defendant is committing tortious acts, engaging in interstate commerce, and has caused substantial harm within the State of Illinois.

## II.     INTRODUCTION

4.     Plaintiff brings this civil action under 35 U.S.C. § 271, *et seq.* to halt and redress the willful and coordinated infringement of its U.S. Patent No. 11,478,575 (the "'575 Patent"), which covers a patented anti-choking emergency device, titled "Removal Device for Removing Obstruction in Respiratory Tract and Connector", issued by the United States Patent and Trademark Office.

5.     Defendants operate unauthorized e-commerce storefronts on Amazon.com that advertise and sell anti-choking devices incorporating the same core features as Plaintiff's patented invention—including a collapsible gasbag, connector, and interchangeable face masks—without license, authority, or consent.  These infringing products are marketed through the same online sales channels as Plaintiff's authorized distribution partners and compete directly with Plaintiff's patented product offerings.

6.     Defendants' online storefronts are designed to closely resemble Plaintiff's own marketing, including similar visual layouts, consumer messaging, and keyword targeting, with

the intent to mislead consumers into believing the infringing goods are genuine, authorized or affiliated with Plaintiff.

7.     As a result of Defendants' ongoing and unlicensed exploitation of Plaintiff's patented invention, Plaintiff has suffered and continues to suffer irreparable harm, including the loss of market share, diminished ability to grow its presence in the emergency medical device field, and erosion of the exclusive rights secured by its patent.

8.     Plaintiff brings this action not only to enforce its lawful patent rights, but also to safeguard consumers from unknowingly purchasing infringing and potentially unregulated products through deceptive online storefronts. Accordingly, Plaintiff seeks injunctive and monetary relief to prevent further harm and to hold Defendants accountable for their unlawful conduct.

### III.     THE PARTIES

9.     DCSTAR is an innovative corporation dedicated to improving public health and advancing medical technology to promote a better quality of life. Through years of research, development, and innovation, DCSTAR has secured multiple patents registered with the U.S. Patent and Trademark Office.

10.     Among these is the '575 Patent, which covers an emergency medical device specifically designed to extract or dislodge airway obstructions in choking incidents where the Heimlich maneuver proves ineffective. The patented device is the result of extensive testing, material optimization, and real-world application. It has successfully aided numerous individuals in medical emergencies and has received positive feedback from consumers.

11.     The invention behind the '575 Patent was inspired by the frequent choking risks faced by children and is intended for use by a broad range of individuals across various age groups. In its commitment to innovation, DCSTAR continues to enhance the materials used in its products to ensure that they are safe, durable, cost-effective, and highly portable for emergency use.

12.     DCSTAR holds all rights, title, and interest in the '575 Patent, including the exclusive rights to manufacture, license, distribute, market, and sell any product covered by the patent. Defendants have never been authorized or licensed by DCSTAR to make, use, sell, or offer for sale any products covered by the '575 Patent.

13.     Upon information and belief, Defendants manufacture and export their infringing products from China. Defendants are individuals and business entities who operate under assumed names and aliases through interactive online storefronts on third-party e-commerce platforms, including Amazon, to advertise and sell infringing products to consumers in the United States, including in the State of Illinois.

## IV.     DEFENDANTS' UNLAWFUL CONDUCT

14.     The commercial success and innovative design of Plaintiff's patented anti-choking device have rendered it an attractive target for infringement by opportunistic, unauthorized sellers. Plaintiff has identified multiple infringing storefronts—a small part of those listed in Schedule A in this action—that operate through Amazon's marketplace and deliberately promote, sell, and ship unauthorized replicas of the patented product into this Judicial District and nationwide. These storefronts are strategically structured to capture U.S. consumer demand

by mimicking the appearance, functionality, and commercial presentation of Plaintiff's genuine offerings.

15.     Upon information and belief, these storefronts are not isolated actors but are instead part of a broader, coordinated infringement scheme that relies on anonymity, recycled seller identities, deceptive marketing, and cross-border operational concealment to evade enforcement and unlawfully profit from Plaintiff's intellectual property.

16.     Defendants, acting through the Seller Aliases, deliberately target consumers within this Judicial District and throughout the United States by advertising and selling infringing products through fully interactive online storefronts. These storefronts offer direct shipping to U.S. consumers and frequently rely on international courier services or Amazon Prime logistics to enable rapid delivery while evading traditional customs inspections. According to a report commissioned by The Buy Safe America Coalition, the majority of counterfeit goods now enter the United States via international mail and express couriers, rather than through containerized shipping, due to the rise of offshore e-commerce infringement.[1] The report further highlights that the growing volume of counterfeit imports—particularly from China and other anonymous online sources—has had a profound and damaging impact on the U.S. economy. [2]

17.     As described in the report, counterfeiters operating outside the formal distribution chain have caused the displacement of an estimated 39,860 jobs in the wholesale sector and 283,400 jobs in the retail sector. [3]These job losses represent not only a blow to American workers but also a destabilizing force within entire sectors of legitimate commerce. Besides, these economic harms are accompanied by substantial wage losses. In the conclusion part of the

---

[1] *See* The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States, John Dunham & Associates (prepared for The Buy Safe America Coalition, Oct. 2021), available at https://www.buysafeamerica.org/counterfeits-holiday-shopping-risk-economic-harm (last visited June 30, 2025).
[2] *See id*.
[3] *See id*.

report, "Since these products do not enter normal distribution channels, they likely cost the US economy nearly 653,450 full-time equivalent jobs, paying over $33.6 billion in wages and benefits to workers. In addition, over $13.5 billion in personal and business tax revenues alone, not to mention state and local sales taxes, would be lost." [4]

18.     Counterfeit consumer goods—including those purporting to serve medical or safety-related functions—often pose serious risks to public health.[5] These products are frequently produced in unsanitary and unregulated conditions and may fail to meet even minimal safety standards.[6] In this case, Defendants' infringing products purport to serve as emergency anti-choking devices, yet Plaintiff has no control over the conditions under which they are produced or marketed. Consumers who unknowingly purchase these infringing devices may rely on them during life-threatening emergencies, unaware that the products may potentially not function as intended.

19.     The rise of international e-commerce has facilitated the widespread availability of infringing goods. Infringers like the Defendants exploit online marketplaces—such as Amazon.com—which generate hundreds of billions of dollars in annual revenue. According to the *Intellectual Property Rights Seizure Statistics Fiscal Year 2024 report* published by U.S. Customs and Border Protection, the total manufacturer's suggested retail price (MSRP) of counterfeit goods seized in FY 2024 exceeded $5.4 billion, marking a 415% increase from FY 2020 levels.[7] Notably, 97% of these seizures occurred through de minimis shipments via express consignment and international mail, underscoring the central role of small parcel networks in

---

[4] *See id*.
[5] *See* U.S. Immigration & Customs Enf't, The Dangers of Buying Counterfeit Goods, U.S. Dep't of Homeland Sec., https://www.ice.gov/features/dangers-counterfeit-items (updated June 3, 2025). *See also* U.S. Customs & Border Prot., Fake Goods, Real Dangers, https://www.cbp.gov/trade/fakegoodsrealdangers (last modified June 9, 2025).
[6] *See id*.
[7] *See* "Intellectual Property Rights Seizure Statistics Fiscal Year 2024 ," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 3964-0125 (January 16, 2025).

distributing counterfeit and infringing goods. [8] These illicit products pose ongoing threats to public health and safety and contribute to widespread economic harm, including diminished tax revenues and the erosion of lawful business activity.

20.     Investigative reporting has confirmed that online retail platforms—particularly Amazon.com—remain vulnerable to widespread counterfeiting due to insufficient enforcement mechanisms. [9] As noted by The *New York Times' Wirecutter*, Amazon continues to host thousands of counterfeit, mislabeled, and potentially unsafe products sold by third-party sellers who exploit loopholes in the platform's product verification systems. These sellers often "hijack" legitimate listings, impersonate authorized vendors, and advertise unauthorized products using deceptive branding and descriptions. Although Amazon has established content guidelines, counterfeit listings frequently remain active for prolonged periods and are often indistinguishable from authentic offerings. These infringing products are frequently constructed using substandard materials, posing significant health and safety risks to unsuspecting consumers. [10]

21.     On information and belief, Defendants' online storefronts are deliberately crafted to appear legitimate and trustworthy, incorporating visuals, keywords, and features which easily make unknowing customers associate them with Plaintiff's genuine products. These storefronts accept U.S. payments through credit cards, Amazon Pay,  they also advertise consumer-friendly policies such as "30-day free returns and replacement" all designed to falsely suggest association with Plaintiff's products.

22.     On information and belief, Defendants actively monitor litigation resources and IP   enforcement   channels—such   as   online   forums   and   tracking   websites   including

---

[8] *See id.*
[9]     *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/.
[10] *See id.*

sellerdefense.cn and 123tro.com—which are known to disseminate tactics designed to evade legal enforcement. These tactics include hiding or transferring assets, changing store names, suspending the sale of infringing products, and rapidly withdrawing funds from online accounts to offshore bank accounts upon detection of U.S. IP litigation. Such strategies hinder IP rights holders from effectively enforcing their legal rights and allow infringers to continue their unlawful conduct with minimal or no consequence.

23.    On information and belief, Defendants routinely rotate between newly created seller aliases and storefront identities across various online platforms, enabling them to quickly resume infringing sales under different names once enforcement efforts are initiated.

24.    On information and belief, in an effort to evade accountability, Defendant utilizes a network of third-party payment processors—including, but not limited to, PayPal, Payoneer, Stripe, Alipay, and Amazon Payments—and maintains offshore accounts to conceal and transfer illicit proceeds. Once litigation or enforcement efforts are detected, Defendants routinely transfer funds from these payment platforms to bank accounts located beyond the jurisdiction of this Court and, in many cases, outside the United States entirely. This multilayered financial structure substantially hinders post-judgment recovery and allows Defendants to continue their infringing operations with minimal interruption.

25.    On information and belief, the infringing storefronts listed in Schedule A are operated by the same individuals or coordinated entities, or are otherwise working in active concert. The similarities in store design, product package, product appearance and description, and fulfillment behavior demonstrate substantial overlap in strategy, operations, and execution, supporting a finding of joint or common enterprise.[11]

---

[11] *See generally,* Plaintiff's Memorandum Establishing that joinder is Proper, which will be filed contemporaneously with this Complaint; *see also* the Declaration of Qiushi Chen submitted in support of Plaintiff's Memorandum Establishing that joinder is Proper .

26.     On information and belief, the infringing products originate from the same or closely related manufacturing sources in China. The packaging, instructional materials, and product dimensions reflect standardized production likely coordinated by a central manufacturer or supplier. Defendants appear to source and resell these products under interchangeable storefront identities.[12]

27.     Plaintiff's counsel has conducted test purchases from the infringing storefronts and confirmed shipment of Infringing Products into the State of Illinois, including delivery to addresses within this Judicial District. This further confirms that Defendants target and profit from Illinois-based customers and establishes personal jurisdiction and venue. [13]

28.     On information and belief, Defendants had both actual and constructive knowledge of the '575 Patent and Plaintiff's exclusive rights therein. This is evidenced, in part, by the fact that products bearing the '575 Patent—sold by Plaintiff's authorized brand partners—appear directly on the same Amazon product listing pages as Defendants' infringing products. Specifically, these authorized products are displayed in both the "Products related to this item – Sponsored" section and the "Compare with similar items" section. Although these listings are not operated under Plaintiff's corporate name, they are part of Plaintiff's authorized distribution channel and include proper patent markings in accordance with 35 U.S.C. § 287. The presence of these references on the same page as the Infringing Products demonstrates substantial commercial and visual proximity, supporting a finding that Defendants either had actual knowledge of the '575 Patent or acted with willful blindness toward Plaintiff's patent rights.

---

[12] *See id.*
[13] *See id.*

29.     Defendants have never been licensed or authorized to use Plaintiff's '575 Patent. Nonetheless, they knowingly and willfully import, advertise, and sell infringing products into the U.S. market, including direct shipments to Illinois consumers.

30.     Plaintiff continues to investigate the full scope of Defendants' operations, which remain obscured by alias use and deliberate non-disclosure. Upon information and belief, Defendants direct and profit from the infringing conduct, and have a direct financial stake in the sale of the unauthorized products.

31.     There exists a direct causal link between Defendants' infringement and the commercial benefit they receive. Each sale of an infringing product contributes to the loss of Plaintiff's market share, diminishes consumer trust, and erodes the exclusive rights conferred by the '575 Patent.

**CAUSE OF ACTION**
**PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '575 PATENT**

32.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1–28 of this Complaint.

33.     Plaintiff is the exclusive lawful owner and assignee of all rights, title, and interest in and to United States Patent No. 11,478,575 (the "'575 Patent"), entitled "Removal Device for Removing Obstruction in Respiratory Tract and Connector." The '575 Patent was duly and lawfully issued by the United States Patent and Trademark Office on October 25, 2022, naming Ligui He as the inventor and Plaintiff, DCSTAR Inc. as the applicant and assignee. The '575 Patent is valid, enforceable, and has remained in full force and effect since its issuance. A true and correct copy of the '575 Patent is attached hereto as Exhibit 1.

34.     Upon information and belief, Defendants are acting in active concert and have jointly and severally, knowingly and willfully manufactured, imported, distributed, offered for

sale, and/or sold infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants have no license or authorization from Plaintiff and have imported and sold infringing products into the United States for commercial gain.

35.     Representative Claim 1 of the '575 Patent recites:

A removal device for removing an obstruction in a respiratory tract, the removal device comprising a collapsible gasbag, a connector and a face mask which are sequentially connected,

[a] wherein the collapsible gasbag is internally provided with a gas storage cavity,

a top of the collapsible gasbag is sealed, and a bottom of the collapsible gasbag is provided with an opening in communication with the gas storage cavity;

[b] an upper side of the connector is hermetically connected to the opening, and the connector is provided with a first check valve and a second check valve, a first gas outlet end of the first check valve is in communication with the gas storage cavity, a second gas inlet end of the second check valve is in communication with the gas storage cavity, and a second gas outlet end of the second check valve is in communication with the outside; and

[c] an upper side of the face mask is hermetically connected to a first gas inlet end of the first check valve, and a lower side of the face mask is provided with a flexible annular pad configured to attach to a face,

[d] wherein the connector comprises a bottom plate and the first check valve and the second check valve are arranged on the bottom plate, wherein the first check valve and the second check valve allow gas flow to pass in opposite directions.

36.     Defendants have infringed, and are continuing to infringe, at least Claim 1 of the '575 Patent by manufacturing, marketing, importing, offering for sale, and/or selling the Infringing Products within the United States without authorization or license from Plaintiff. Such infringement occurs either literally or under the doctrine of equivalents.

37.     Further, Defendants had both actual and constructive knowledge of the '575 Patent and Plaintiff's exclusive rights therein. Plaintiff's authorized products—clearly marked with the '575 Patent—appear on the same Amazon product listing pages as Defendants' Infringing Products, including in the "Sponsored" and "Compare with similar items" sections. This further supports a finding of willful infringement.

38.     Defendants have never been licensed or otherwise authorized to use the '575 Patent. Their actions constitute direct and willful infringement of the '575 Patent.

39.     Defendants have profited from their infringing conduct, and Plaintiff has suffered actual harm, including lost sales, diminished market share, and erosion of its exclusive patent rights.

40.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined. Defendants' actions have deprived Plaintiff of its statutory right to exclude others from practicing the claimed invention.

41.     Upon information and belief, Defendants' infringement has been and continues to be willful. Defendants have long been aware of the '575 Patent and the need to obtain a license, yet they have deliberately continued their infringing conduct with knowledge of the patent, in conscious and reckless disregard of Plaintiff's rights. Such willful infringement warrants enhanced damages under 35 U.S.C. § 284.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1)     That the Court enter judgment that Defendants have infringed and, unless enjoined, will continue to infringe Plaintiff's United States Patent No. 11,478,575 ("the '575 Patent") pursuant to 35 U.S.C. § 271;

2)     That Defendants, their respective affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

a.   Manufacturing, using, offering for sale, selling, and/or importing into the United States any products that infringe Plaintiff's '575 Patent;

b.   Aiding, abetting, inducing, contributing to, or otherwise assisting others in infringing the '575 Patent;

c.   Effecting assignments or transfers, forming new entities or business identities, or using any other device or method to circumvent or avoid the prohibitions of this Order;

3)     That, upon request by Plaintiff, all third-party platforms and service providers, including but not limited to Amazon and any other online marketplace, be ordered to disable and cease displaying, advertising, promoting, selling, or facilitating any listings, storefronts, or accounts used by Defendants in connection with the Infringing Products;

4)     That judgment be entered finding that Defendants' infringement of the '575 Patent has been willful, deliberate, and in conscious disregard of Plaintiff's rights;

5)     That Plaintiff be awarded damages for Defendants' infringement, including but not limited to:

     a.     Defendants' profits attributable to the infringement, to the extent permitted by law, together with interest and costs;

     b.     Treble damages under 35 U.S.C. § 284 due to the willful nature of Defendants' infringement;

6)     That Plaintiff be awarded both prejudgment and postjudgment interest pursuant to 35 U.S.C. § 284 and applicable law;

7)     That the Court find this case to be exceptional under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees and costs incurred in this action;

8)     That Plaintiff be awarded all other reasonable costs and expenses, including investigative costs and other litigation-related expenditures as permitted by law.

9)     That the Court grant such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: July 1, 2025                Respectfully submitted,

                                /s/Qiushi Chen
                                Qiushi Chen
                                PO BOX 391064
                                Mountain View, CA 94039
                                Telephone: (650) 220-4960
                                Email: qiushichen176@gmail.com
                                ***Counsel for Plaintiff, DCSTAR Inc.***